**Ryan Anthony SOTO, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–03–365–CR.**

Court of Appeals of Texas, Fort Worth.

Jan. 6, 2005.

---

PANEL A: CAYCE, C.J.;
DAUPHINOT and GARDNER, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

A jury convicted Appellant Ryan Anthony Soto of attempted capital murder, and the trial court sentenced him to twenty-four years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant brings three points on appeal, arguing that the trial court committed reversible error (1) in admitting testimony during the guilt-innocence phase of extraneous assaults against the complainant and the complainant's mother and (2) in accepting the jury's finding that a deadly weapon was used in the commission of the offense. Because we hold that the trial court did not err, we affirm the trial court's judgment.

### BACKGROUND FACTS

In April 2002, Appellant was living with his girlfriend, LaNelle Shope, and her fifteen-month-old son, Hayden, the complainant. On April 28, 2002, Appellant took Hayden into the bedroom to change his diaper and to try to get him to go to sleep. When Shope noticed that it had gotten quiet in the bedroom, she went in to check on Appellant and her son. Appellant and Hayden were on the bed. Appellant was straddling the child. Hayden had turned blue, and his eyes were rolled back in his head. Shope testified that she saw a pillow get tossed from the bed onto the floor when she entered the room.

Shope grabbed her son up from the bed and went to call 911. Appellant grabbed the phone from her and broke it, so Shope went outside and used an emergency phone to call 911. The two officers who arrived at the scene both testified that the complainant was bluish with his eyes rolled

Terry M. Casey, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Steven W. Conder, Barbara Griffin and Lloyd Whelchel, Asst. Criminal District Attorneys, Fort Worth, for appellee.

back in his head and that his breathing was shallow and unresponsive. The officers also testified that Shope was screaming that Appellant had tried to kill her baby.

Appellant was arrested while the complainant was being transported to the hospital, where he was treated and later released. Dr. Jayme Coffman, testifying for the State, stated that the complainant's coloration, eye rolling, and cessation of breathing indicated suffocation, and that, in her opinion, a pillow placed and held down over a child's face could be a deadly weapon.

Shope also testified to two prior instances of violence by Appellant, one resulting in Appellant hitting Shope and the other involving Appellant hitting the complainant because he was crying and would not stop.

### EXTRANEOUS OFFENSES

■ In his first point, Appellant argues that the trial court erred in admitting an extraneous offense that Appellant committed against Shope, the complainant's mother. In his second point, Appellant argues that the trial erred in admitting evidence of his prior assault against the complainant, Hayden.

■ We review the trial court's admission of evidence under an abuse of discretion standard.[1] If the trial court's

decision to admit the evidence lies within the zone of reasonable disagreement, then the decision must be upheld.[2] In situations such as this, we will affirm the decision of the trial court if there is any valid ground upon which the decision could have been made.[3] Article 38.36 of the Texas Code of Criminal Procedure provides, in relevant part:

> (a) In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.[4]

"Former Texas Penal Code section 19.06 was virtually identical to Article 38.36(a)." [5] Former section 19.06 applied to capital murder prosecutions.[6] It also applied to attempted murder prosecutions.[7] Consequently, we hold that article 38.36(a) applies to attempted capital murder prosecutions.

■ Evidence admitted under article 38.36 is still subject to the extraneous offense rules of 403 and 404(b).[8] That is, extraneous offense evidence is inadmissible if offered solely to prove character conformity or if it is unduly prejudicial.[9] If, however, the evidence is offered for the

1. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g).

2. *Id.* at 391; *Rankin v. State*, 974 S.W.2d 707, 718 (Tex.Crim.App.1998) (op. on reh'g).

3. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim. App.2000).

4. TEX.CODE CRIM. PROC. ANN. art. 38.36 (Vernon Supp.2004–05).

5. *Ex parte Varelas*, 45 S.W.3d 627, 649 (Tex. Crim.App.2001) (Holland, J., concurring op. to den. of State's mot. for reh'g).

6. *Lamb v. State*, 680 S.W.2d 11, 16–17 (Tex. Crim.App.1984), *cert. denied*, 470 U.S. 1009, 105 S.Ct. 1372, 84 L.Ed.2d 391 (1985).

7. *Hall v. State*, 640 S.W.2d 307, 309 (Tex. Crim.App.1982).

8. *Smith v. State*, 5 S.W.3d 673, 679 (Tex. Crim.App.1999).

9. TEX.R. EVID. 403, 404(b).

purpose of showing and does show the relationship between the parties, the evidence is admissible under rule 38.36 unless it is unduly prejudicial.[10] Rule 404(b) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[11]

The State offered the evidence of the prior assault on the complainant for purposes of motive and intent. The trial court admitted the evidence over Appellant's objections. The trial court stated, out of the presence of the jury, "I'm going to allow the reaction to the crying. That you said how he acted on that. I am also going to allow what she identified as a mark, him crying." On appeal, the State argues that the admission of the evidence is within the zone of reasonable disagreement to show Appellant's intent, motive, and state of mind in commission of the offense at bar. The State argues that "the prior incident shows the Appellant's inability to control his response to the baby's crying and his intent to use physical means to stop it."

The evidence that Appellant complains of regarding Shope is that Appellant hit her because she wanted to let Hayden sleep with them when he woke up in the middle of the night and was crying. The trial court admitted the evidence apparently for the purposes for which it was offered—to show motive and intent. On appeal, the State argues that this evidence shows Appellant's "hostile response when Hayden's wants and needs were put ahead of his own wants and needs." The State also argues that this evidence shows Appellant's "intent, motive, and state of mind in attempting to suffocate Hayden with a pillow when he would not stop crying."

The State's argument regarding the admission of the extraneous offenses is extremely close to an argument that the State should be allowed to show the prior relationship of the parties.[12] We note that article 38.36 and rule 404(b) are both limited internally to relevant evidence.[13] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[14] Neither article 38.36 nor rule 404(b) permits evidence of extraneous acts of misconduct to prove mere character conformity.

As the State points out, Appellant had a limited history of overreacting to Hayden's crying. On one occasion, he struck him. On another occasion, he struck Hayden's mother because she insisted on placing the child in the bed with them when the child awoke and cried. We conclude that this evidence is relevant under rule 404(b) as evidence of Appellant's pattern or course of conduct, intent, and lack of accident.[15] We further conclude that the evidence is relevant under article 38.36 as evidence of the relationship of Appellant and Hayden or of Appellant's state of mind at the time

---

10. *Smith,* 5 S.W.3d at 679.

11. Tex.R. Evid. 404(b).

12. *See* Tex.Code Crim. Proc. Ann. art. 38.36.

13. Tex.R. Evid. 404(b); Tex.Code Crim. Proc. Ann. art. 38.36.

14. Tex.R. Evid. 401; *Rankin,* 974 S.W.2d at 718.

15. *See* Tex.R. Evid. 404(b).

of the offense.[16]

■ Rule 403 provides that even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."[17] As the State points out, it is not mere prejudice that will render the evidence inadmissible. It is doubtful that the State would offer evidence that did not in some way prejudice a defendant in a criminal case. The question is whether the admission of the evidence is *unfairly* prejudicial. Evidence is unfairly prejudicial if it inflames and prejudices the jury to the point that it creates an undue tendency to suggest a verdict on an improper basis, such as an emotional basis.[18] The rule favors admissibility over exclusion.[19] Factors that trial courts should consider in the rule 403 balancing test include:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense;

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent

have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.[20]

In the case now before this court, there was no direct evidence of the manner and means of attempting to cause Hayden's death. There was no evidence that the child was struck. There were no broken bones. There were no signs of scalding. The only thing Shope saw was a pillow being tossed onto the floor. The medical evidence was that the child's symptoms were consistent with being smothered. Smothering, however, can be accidental. The State needed the evidence of the extraneous offenses, which took little time to develop and had little likelihood of impressing a jury in an irrational way, to show Appellant's intent and to show that the complainant's injury was not the result of an accident. The evidence of the extraneous offenses showed specifically that Appellant had demonstrated in the past an intent to injure the child, and he had shown a willingness to injure the mother when she tried to protect the child when he was crying. Based on the appropriate factors,[21] we hold that the evidence's probative value is not substantially outweighed by the danger of unfair prejudice. Because the admission of the evidence was permissible under rules 403 and 404(b), as well as article 38.36, the trial court did not abuse its discretion in admitting the evidence. We overrule Appellant's first and second points.

### DEADLY WEAPON FINDING

■ In his third point, Appellant argues that the evidence is legally insuffi-

---

16. *See* Tex.Code Crim. Proc. Ann. art. 38.36.

17. Tex.R. Evid. 403.

18. *Montgomery,* 810 S.W.2d at 378.

19. *Id.* at 389.

20. *Santellan v. State,* 939 S.W.2d 155, 169 (Tex.Crim.App.1997) (footnote omitted) (quoting *Montgomery,* 810 S.W.2d at 389–90).

21. *Santellan,* 939 S.W.2d at 169.

cient to establish that the pillow used to smother Hayden was a deadly weapon. A deadly weapon means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.[22]

Police officer Brent Hudson testified that, as the State theorized the pillow was used, it was a deadly weapon. Dr. Jayme Coffman testified that a pillow, if used as the State theorized it was used, was a deadly weapon.

Appellant argues that because neither was provided the definition of a deadly weapon, their evidence was insufficient to establish that the pillow was a deadly weapon, as the standard each used in making his or her determination is unknown. Appellant points to the fact that Hayden did not die as a result of being smothered with a pillow. Although a police officer testified that he felt like the child was close to death, Appellant argues that there was no competent medical evidence that Hayden suffered serious bodily injury.

The evidence shows that Hayden was a purple-blue color and limp, and his eyes had rolled back. Dr. Coffman testified that Hayden's bluish color, his rolled-back eyes, and the cessation of breathing indicated suffocation. The only evidence that Hayden had stopped breathing was his mother's testimony that she could not tell whether he was breathing. Dr. Coffman testified that the description of Hayden's condition was consistent with suffocation. It is common knowledge that suffocation, if it lasts long enough, may cause death. No expert testimony is necessary to prove this fact, just as no expert testimony is necessary to prove that drowning can cause death. Admittedly, these two deadly acts are exceptions to the general requirement that expert testimony is required.

Applying the appropriate standard of review for legal sufficiency,[23] we hold that the evidence is legally sufficient to support the jury's finding that the pillow used in the case now before this court was, in the manner of its use and intended use, capable of causing death and serious bodily injury and that the pillow, therefore, was a deadly weapon. We overrule Appellant's third point.

### Conclusion

Having overruled Appellant's three points, we affirm the trial court's judgment.

**22.** Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp.2004–05).

**23.** *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Burden v. State,* 55 S.W.3d 608, 612 (Tex. Crim.App.2001); *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App.1999), *cert. denied,* 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).