OPINION HEADING PER CUR 







                     NO. 12-04-00174-CR
        
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


BOBBY GENE HENDERSON,                        §     APPEAL FROM THE 392ND
APPELLANT

V.                                                                         §     JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §     HENDERSON COUNTY, TEXAS





MEMORANDUM OPINION
            Appellant Bobby Gene Henderson was convicted by a jury for aggravated assault with a
deadly weapon and sentenced to fifty years of imprisonment with a $10,000 fine. In four issues,
Appellant contends that the trial court erred when it allowed him to appear before the jury in
handcuffs, did not determine that one of the jurors was disabled, allowed the State to offer evidence
of an extraneous offense during the guilt/innocence phase of the trial, and did not allow him to assert
his Fifth Amendment right while testifying. We affirm.

Background
            The trial evidence showed that on the evening of January 6, 2003, Appellant abruptly entered
the apartment of Roshawn Reed at 337 South Martin Plaza in Malakoff, Texas. In the apartment
with Roshawn were her two children, the older of whom was six; her sister Domanick Jones, with
her two children who were younger than Roshawn’s children; and her cousins Roshelle Givens,
Natasha Jackson, Dana Green. Appellant brandished a black handgun upon his entry into the
apartment and made everyone sit down. He then pointed the gun at Roshawn and threatened to kill
her unless she told him “where the money at.” He continued threatening to kill Roshawn and took
her back to the master bedroom several times demanding that she give him the money and telling
her he would shoot her if she did not comply. Once when Appellant took Roshawn to the master
bedroom, Domanick hit the redial button on Roshawn’s telephone. The call went to the cell phone
of Roshawn’s boyfriend, James Ray, who lived with Roshawn. Domanick attempted to tell Ray
what was going on, but Ray could hear only crying. However, he recognized the telephone number
on his caller ID and immediately drove to the apartment. When he arrived, he saw Natasha “and
them” running from the apartment. Natasha told him what was occurring inside the apartment. He
then jumped back in his car and headed toward the police station. 
            On the way to the police station, Ray saw a Henderson County Deputy Sheriff, Kevin
Halbert, driving through Malakoff. He stopped the officer, and both Ray and Halbert went to the
apartment at 337 South Martin Plaza. Appellant saw Halbert preparing to enter the apartment and
fled out the back door. Halbert went through the apartment and began chasing Appellant in the back
yard. During the chase, Appellant threw the black handgun over a fence into an adjoining yard. 
Halbert subsequently caught Appellant and took him into custody.  
            Appellant was indicted for assault with a deadly weapon. The indictment also alleged two
prior final felony convictions for purposes of sentence enhancement. During the first trial for this
offense, Appellant fled. He was later rearrested and brought to trial a second time. At that trial, a
jury found Appellant guilty of aggravated assault with a deadly weapon. After Appellant pleaded
“true” to each enhancement paragraph in the indictment, the jury assessed punishment at fifty years
of imprisonment and a $10,000 fine. Appellant timely filed this appeal. 
Wearing Handcuffs During Trial
            In his first issue, Appellant contends that the trial court erred when it required him to appear
in front of the jury restrained by handcuffs. The harm a defendant suffers when the jury sees him
in handcuffs or shackles is that his constitutional presumption of innocence is infringed. Long v.
State, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991). The United States Supreme Court has stated
that no person should be tried while shackled except as a last resort. Illinois v. Allen, 397 U.S. 337,
344, 90 S. Ct. 1057, 1061, 25 L. Ed. 2d 353 (1990). However, the United States Supreme Court has
also said that trial judges confronted with disruptive, contumacious, or stubbornly defiant defendants
must be given sufficient discretion to meet the circumstances of each case. Id. In some situations,
binding a defendant might possibly be the fairest and most reasonable way to handle a disruptive
defendant during a trial. Id.
            The Texas Court of Criminal Appeals has stated that all efforts should be maintained to
prevent the jury from seeing the defendant in shackles except where there has been a showing of
exceptional circumstances or a manifest need for such restraint. Long, 823 S.W.2d at 282. 
Exceptional circumstances exist when the defendant has attempted to escape, has interfered with
court proceedings, or poses a threat to himself or others. Culverhouse v. State, 755 S.W.2d 856,
859-60 (Tex. Crim. App. 1988). In determining whether the trial court abused its discretion in
requiring the defendant to be tried with handcuffs, each case must be evaluated on its own facts as
reflected by the appellate record. Id. at 860. 
            In the instant case, Appellant fled during the first trial for this offense. He spit blood during
a pretrial hearing and had to be physically restrained by court officials. Further, he acted in a
disruptive manner by jumping up and down in his chair during court proceedings. He had not eaten
for nine days before the second trial began, and he had continually exhibited odd behavior, both in
and out of the presence of the trial judge. Even his defense attorney described his behavior in court
as “raunchy.”
            Our trial courts must be able to operate in an orderly, civilized manner. It would degrade our
country and our judicial system to permit our courts to be bullied, insulted, and humiliated and their
orderly progress thwarted and obstructed by defendants brought before them charged with crimes. 
Allen, 397 U.S. at 345, 90 S. Ct. at 1062. It is clear to us from the trial court record that Appellant
was attempting to make a mockery of the trial court. The trial judge properly exercised his discretion
in restraining the Appellant from any further disruptive behavior during his trial. Appellant’s first
issue is overruled.
Court’s Ruling on Juror Disability
            In his second issue, Appellant contends that the trial court erred when it refused to find that
a juror whose husband’s brother in law died during the trial was disabled. Appellant contends that
the trial court violated article 36.29 of the Texas Code of Criminal Procedure when it failed to
determine that this juror was disabled and failed to replace her. The State contends that the trial
court did not abuse its discretion in failing to find the juror was disabled. 
            Article 36.29(a) provides as follows: 
(a) Not less than twelve jurors can render and return a verdict in a felony case. It must be
concurred in by each juror and signed by the foreman. Except as provided in Subsection (b), however,
after the trial of any felony case begins and a juror dies or, as determined by the judge, becomes
disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the
jury shall have the power to render the verdict; but when the verdict shall be rendered by less than the
whole number, it shall be signed by every member of the jury concurring in it.
 
Tex. Code Crim. Proc. Ann. art. 36.29(a) (Vernon Supp. 2005). 
            The language of Article 36.29 and the cases applying it make clear that the Legislature’s
intent was to limit the Article’s application to those cases where the juror was physically or mentally
impaired in some way that limited his ability to perform his duty as a juror. Brooks v. State, 990
S.W.2d 278, 286 (Tex. Crim. App. 1999). A disability is not limited to physical disease, but also
includes “any condition that inhibits a juror from fully and fairly performing the functions of a
juror.” Reyes v. State, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000) (quoting Griffin v. State, 486
S.W.2d 948, 951 (Tex. Crim. App. 1975)). This condition may result from physical illness, mental
condition, or emotional state. Reyes, 30 S.W.3d at 411; Brooks, 990 S.W.2d at 286. The
determination of whether a juror is disabled is within the discretion of the trial court, and absent an
abuse of that discretion, no reversible error will be found. Routier v. State, 112 S.W.3d 554, 588
(Tex. Crim. App. 2003).
            In the instant case, the juror, at the end of testimony on the first day of trial, came before the
trial judge to report to him that her husband’s sister’s husband had died. The juror said that she
wanted the court to be aware and to make a decision as to whether she should continue as a juror. 
The juror expressed to the trial judge that she felt a responsibility to be with her husband and that
her feelings were with him. The trial judge told the juror that he had noticed her crying during the
day. The juror responded that it was just her allergies and that she was “not a crier.” The court
asked her if she could be a fair and impartial juror by listening to all of the evidence, weighing that
evidence, and making her decision without distraction. The juror responded that she could. 
            The court then allowed counsel for the State and for Appellant to ask the juror questions. She
again testified that the death in her family would not affect her ability to concentrate and pay
attention to the testimony and that she would be a fair juror. The trial judge then told her that she
would remain on the jury, but that if her answer changed to his question about being a fair and
impartial juror, she should let him know in the morning. The juror never asked the trial court to be
excused. 
            The trial court specifically questioned the juror about her ability to concentrate on the
evidence in order to give Appellant a fair and impartial trial. Counsel for both the State and the
Appellant were able to question the juror on any disability. The trial judge was able to hear the
answers of the juror and to see her demeanor as well. We cannot determine from the record before
us that the trial court abused its discretion in not finding that she was disabled. Appellant’s second
issue is overruled.
Extraneous Offense Evidence
            In his third issue, Appellant contends that the trial court erred when it allowed the State to
offer evidence of an extraneous offense during the guilt/innocence phase of the trial. The State
argues Ray’s testimony was admissible because Appellant denied ever possessing the black handgun
introduced into evidence at trial. The State also contends that the testimony is admissible to
establish Appellant’s motive in committing the offense.
Standard of Review
            The trial court’s admission of evidence is reviewed under an abuse of discretion standard. 
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh’g). If the trial
court’s decision to admit the evidence lies within the zone of reasonable disagreement, then the
decision must be upheld. Id. 
            In the case at hand, the State offered the testimony of James Ray, who was Roshawn’s
boyfriend and lived with her, to establish Appellant’s motive for the aggravated assault. Appellant
objected based on the prejudicial nature of the testimony, but the trial court overruled the objection
and allowed the testimony. Ray testified that Appellant was present at a house where Ray and
several other men were shooting dice. Suddenly Appellant pulled a black handgun and told the men
to “drop out,” meaning they were to drop everything out of their pockets. Ray had won
approximately $1,300 and “was hesitating” to give Appellant his money. According to Ray,
Appellant clicked the trigger of the gun twice at Ray’s leg, but the gun did not fire either time. Ray
then picked up a glass table, threw it at Appellant, and ran out the door. During his testimony, Ray
identified the black handgun admitted into evidence as the gun Appellant used that night. The gun
had previously been identified by other trial witnesses as the gun Appellant used in the indicted
offense. Appellant contends on appeal that the trial court abused its discretion by admitting this
testimony.
Analysis
            Even relevant evidence “may be excluded if its probative value is substantially outweighed
by the danger of unfair prejudice.” Tex. R. Evid. 403. When, as here, a defendant makes a Rule 403
objection, the trial court has a nondiscretionary duty to weigh the probative value of the evidence
against the unfair prejudice of its admission. See Williams v. State, 958 S.W.2d 186, 195 (Tex.
Crim. App. 1997). The trial court in the case at bar did not perform the requisite balancing on the
record. However, because the trial court overruled the objection and the record does not show the
court refused to balance probative value and unfair prejudice, we presume that it did so. See
Santellan v. State, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997); Williams, 958 S.W.2d at 195-96. 
            Evidence is unfairly prejudicial if it inflames and prejudices the jury to the point that it
creates an undue tendency to suggest a verdict on an improper basis, such as an emotional basis. 
Soto v. State, 156 S.W.3d 131, 136 (Tex. App.–Fort Worth 2005, pet. ref’d). The rule favors
admissibility over exclusion. Id. We must measure the trial court’s ruling against the relevant
criteria by which a Rule 403 decision is to be made. Montgomery, 810 S.W.2d at 392. A Rule 403
balancing test includes, but is not limited to, the following factors:
(1)how probative is the evidence;
(2)the potential of the evidence to impress the jury in some irrational, but nevertheless indelible
way;
(3)the time the proponent needs to develop the evidence; and 
              (4)         the proponent’s need for the evidence.
 
Reese v. State, 33 S.W.3d 238, 240-41 (Tex. Crim. App. 2000); Montgomery, 810 S.W.2d at 389-90 
(op. on reh’g).
            Ray testified that Appellant had attempted to rob him of $1,300 that he had won in a dice
game approximately a week before Appellant went to Roshawn’s apartment looking for money. Ray
testified that Appellant had a black handgun at the time he attempted to take the money. During the
incident at Roshawn’s apartment, Appellant repeatedly asked Roshawn where “the money” was. In
attempting to locate the money, he ransacked the master bedroom. The fact that Appellant thought
there was money in Roshawn’s apartment could have been explained by the fact that Ray had won
$1,300 in a dice game approximately a week before. Because Roshawn and Ray lived together, this
evidence creates a reasonable inference that Appellant’s motive in committing the indicted offense
was to obtain the $1,300 he had unsuccessfully attempted to take a week earlier. Evidence that
demonstrates the presence of a motive on the part of the accused is admissible if it is relevant as a
circumstance tending to prove the commission of the offense. Gosch v. State, 829 S.W.2d 775, 783
(Tex. Crim. App. 1991). Ray’s testimony is highly probative of motive.
            Further, the State was required to prove that Appellant used a gun during the incident at
Roshawn’s apartment. Appellant testified at trial that he had never been in possession of the black
handgun that was in evidence. He admitted he had seen the gun, but denied ever touching the
magazine. He contended that Ray was the owner of the gun. Eyewitnesses to the indicted offense
identified the black handgun as the one Appellant brandished in Roshawn’s apartment. Ray
identified the handgun in evidence as the gun Appellant had at the dice game. Thus, Ray’s testimony
is highly probative on this contested issue. 
            Through Ray’s testimony, the jury heard about an alleged second incident approximately one
week prior to the indicted offense in which Appellant attempted to take another person’s money
using a handgun. This incident involved threats made at gunpoint to adult men who were
participating in a dice game and his attempt to shoot Ray when he did not turn over the money he
had won. In contrast, witnesses testified that during the aggravated assault, four small children,
including Roshawn’s two children, were present. Roshawn testified that Appellant told her, in front
of the children, that he did not care about her children and that he would kill them also if she did not
give him the money. According to Roshawn, the children were “screaming and hollering before he
made me get up and go to the back.” He told her to “shut the kids up” or he was either going to
shoot them or shoot her in front of them. Other witnesses testified about their fear and uncertainty
as Appellant repeatedly threatened Roshawn and waved his gun. Although both incidents are
extremely serious, the descriptions of Appellant’s behavior at Roshawn’s apartment were more
graphic than Ray’s testimony about the dice game incident. Consequently, the potential for his
testimony to impress the jury in some irrational way was minimal.  
            Ray’s testimony comprises four pages of a 225 page record from the guilt/innocence phase. 
The State spent a short amount of time presenting this evidence and its presentation did not divert
the jury from consideration of the indicted offense.
            Appellant contended that he had never possessed the black handgun. To obtain a conviction,
the State was required to prove otherwise. Ray’s testimony also provides the only evidence showing
why Appellant could have thought Roshawn had money in her apartment. As such, the State’s need
for the evidence was great. 
            All of these factors weigh in favor of the State. We cannot say that the court’s determination
that the evidence was more probative than prejudicial is outside the zone of reasonable disagreement. 
Therefore, we cannot conclude that the trial judge abused his discretion in admitting Ray’s testimony
into evidence. Appellant’s third issue is overruled.
Self Incrimination
            In his fourth issue, Appellant contends that the trial court erred when it did not allow him to
assert his Fifth Amendment right against self incrimination during the punishment phase of the trial.
During his testimony, Appellant did not want to relate the details of an offense for which he had been
indicted in Tarrant County in December 2003. When asked about the offense, he attempted to assert
his Fifth Amendment right against self incrimination to avoid testifying about the offense. On
appeal, he contends that the trial court violated his rights against self incrimination under the Fifth
Amendment of the United States Constitution and article I, section 10 of the Texas Constitution.


 
            The general rule is that a defendant who exercises his right to testify is subject to the same
rules governing examination and cross examination as any other witness, whether he testifies at
guilt/innocence or at punishment. Kos v. State, 15 S.W.3d 633, 642 (Tex. App.–Dallas 2000, pet.
ref’d). In the case before us, Appellant exercised his right to testify during both the guilt/innocence
and punishment phases of his trial. Before he took the stand in both phases of the trial, he had to a
difficult choice to make: whether the benefit of exercising his right to tell his side of the story to the
jury outweighed the detriment of being subjected to cross examination on other prior crimes or bad
acts. See Cantu v. State, 738 S.W.2d 249, 256 (Tex. Crim. App. 1987). When Appellant took the
stand in both phases of his trial, he was subject to cross examination on all matters. Allowing the
State to cross examine Appellant about either charged or uncharged extraneous conduct does not
implicate any constitutional prohibition that would justify an exception to the general rule stated
above. See Kos, 15 S.W.3d at 643. Appellant’s fourth issue is overruled.
Conclusion
            Having overruled Appellant’s four issues, the judgment of the trial court is affirmed.


                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice

Opinion delivered December 30, 2005.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.









(DO NOT PUBLISH)