COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-529-CR

 

 

BROOK ANNETTE ROGERS                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction








Appellant Brook Annette
Rogers appeals her conviction and sentence of four years= community supervision and a $500 fine for possession of a controlled
substance.  In her first point she
contends that the trial court erred by denying her motion to suppress evidence
obtained through the search of her mother=s, Kelly Rogers, residence without proper consent.  In appellant=s second point, she complains that the trial court abused its
discretion in admitting evidence of an extraneous offense that was prejudicial
to appellant and without sufficient probative value. We affirm.  

II. Background Facts

On October 19, 2003, a
citizen found and turned in appellant=s wallet to Officer Douglas Creasey, a police officer with the Flower
Mound Police Department.  The wallet was
determined to contain a quantity of methamphetamine.  On November 17, 2003, at approximately 10:00
p.m., Sergeant Colin Sullivan and Corporal Tommy Cox, police officers with the
Flower Mound Police Department, arrived at 534 Harvest Hill in Lewisville,
Texas to investigate the matter as a narcotics case. 

After Sergeant Sullivan and
Corporal Cox knocked on the door and told appellant why they were there,
appellant allowed them inside the house.  
Corporal Cox asked appellant=s permission to look in the house and appellant responded, AI only stay here.  It is really
not my house.@  Appellant then told the officers that the
house belonged to her mother, Kelly.








At about that time, Kelly
walked in from the back of the house and after the officers showed her their
identifications, Kelly stated that it was her house and agreed to allow the
officers to search it.  Corporal Cox then
asked appellant if there were any drugs or narcotics in the house, and
appellant walked into the bathroom that adjoined the living room with Corporal
Cox and showed him the narcotics and paraphernalia.

The jury found appellant
guilty of possession of a controlled substance and assessed her punishment at
two years in the Institutional Division of the Texas Department of Criminal
Justice and a $500 fine.  The trial court
suspended the imposition of appellant=s sentence and placed her on community supervision for four years and
ordered her to pay the $500 fine.

III. Motion to Suppress

In her first point, appellant
argues that the trial court erred in denying her motion to suppress because the
entry and search of Kelly=s house and
her subsequent arrest violated the Fourth Amendment of the United States
Constitution and article I, section 9 of the Texas Constitution.  U.S.
Const. amend. IV; Tex. Const.
art. I, ' 9.  The State contends that the
trial court properly denied appellant=s motion to suppress because the search of the house was valid based
on the officers= reasonable
belief that appellant=s mother had
authority to consent to the search.








Appellant does not
distinguish her rights under the United States Constitution and the Texas
Constitution from one another. 
Therefore, we will only address whether appellant=s rights were violated under the United States Constitution.  See Dewberry v. State, 4 S.W.3d 735,
743-44 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000)
(addressing only United States Constitution because failed to distinguish
rights with Texas Constitution); Hale v. State, 139 S.W.3d 418, 421
(Tex. App._Fort Worth 2004, no pet.) 
(determining appellant failed to distinguish between United States
Constitution and Texas Constitution).

A.  Standard of Review








We review a trial court's
ruling on a motion to suppress evidence under a bifurcated standard of
review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court's decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App.
1999).   Therefore, we give almost total
deference to the trial court's rulings on (1) questions of historical fact and
(2) application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor.  Johnson v.
State, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); State v. Ballman, 157
S.W.3d 65, 67 (Tex. App.CFort Worth
2005, pet. ref=d); Best,
118 S.W.3d at 861-62.  However, when the
trial court=s rulings do
not turn on the credibility and demeanor of the witnesses, we review de novo a
trial court's rulings on mixed questions of law and fact.  Johnson, 68 S.W.3d at 652-53.  We must uphold the trial court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004);
Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d at 543.  

B.  Applicable Facts








At the trial, Sergeant
Sullivan testified that after he and Corporal Cox asked for permission to
search the residence, appellant responded, AI only stay here.  It is really
not my house,@ and told
the officers that it was Kelly=s house. Appellant told the officers that her son, Cameron, was in the
front bedroom sleeping and asked them to be quiet so that he would not wake
up.  At about that time, Kelly walked in
from the back bedroom and after the officers explained to her why they were
there, she stated, A[I]f there
is narcotics here, I want it out.@  He stated that there was
nothing questionable about Kelly=s consent.  The officers then
asked appellant if there were any drugs or narcotics in the house, and
appellant walked into the bathroom with Corporal Cox and showed him the
narcotics and paraphernalia.  Although
Sergeant Sullivan did not go into the bathroom with Corporal Cox and appellant,
he could see that after appellant showed Corporal Cox where the narcotics were,
Corporal Cox began pulling the items out of a drawer.  Corporal Cox then asked appellant to go into
the living room and appellant sat with Sergeant Sullivan and Kelly. 

Sergeant Sullivan further
stated that when he and Corporal Cox first arrived at the house, he thought
that only appellant and her boyfriend, Randy Spalding, lived there and did not
know that it was actually Kelly=s house.  Additionally, he
stated that it was his understanding that the bathroom was the common bathroom
that guests would use.  Sergeant Sullivan
testified that when appellant was asked for consent to search the house,
appellant did not say Ayes@ or Ano,@ but instead stated that it was her mother=s house.

Corporal Cox testified that
when he asked appellant for consent to search the house, she responded that it
was not her house.  At about that time,
Kelly walked into the living room and Corporal Cox asked Kelly for consent to
search. Corporal Cox stated that after he asked Kelly for consent, appellant
turned to Kelly Aas if she
was going to tell her no.@  But Kelly told the officers that it was her
house and that they Acan search
wherever.@  Next, the officers asked appellant if there
were any drugs in the house, and appellant led Corporal Cox to the bathroom and
said, A[a]nything we have is in here.@  In the bathroom, Corporal Cox
discovered narcotics, baggies, pipes, and paraphernalia.  








He stated that appellant did
not tell him that it was her bathroom and that he could not search it.  Corporal Cox further testified that he got
consent from Kelly, whom he believed to be the owner of the house.  Corporal Cox did not ask if appellant and
Spalding had an exclusive right to the bathroom. 

Kelly testified that she
allowed appellant and Spalding to move in with her in March 2002.  She stated that she allowed them to live in
the front bedroom and bathroom as long as appellant maintained the house and
prepared dinner and Spalding maintained the yard, took out the trash, and fixed
any minor maintenance problems.  Kelly
said that she did not use or clean 
appellant=s bedroom or
bathroom.

Kelly stated that on November
17, she awoke when she heard male voices in the living room.  When she walked out of her bedroom and into
the living room, Kelly stated, AWho the hell are you?@ and after the officers identified themselves, she asked to see their
identifications and they complied. The officers then asked appellant if they
could search the house and appellant responded that she wanted to speak to an
attorney or make a phone call.  Corporal
Cox told appellant that she could not call anyone.  Kelly testified that appellant asked to speak
to an attorney over half a dozen times, and each time, the officers refused her
request.








The officers then forced
appellant to sit on the ottoman in the entryway and both Sergeant Sullivan and
Corporal Cox stood in front of her so that she could not move.  The officers then told appellant that she was
going tell them what they wanted to know. 
Kelly stated that the officers were very intimidating to appellant and
that appellant was scared.

Kelly also testified that the
officers asked her if she was aware of any drugs in the house and she said that
she was not.  The officers told her that
her house was going to be searched one way or another and that she could be
arrested if any drugs were found in the house and Cameron could be sent to
foster care.  She stated that she asked
the officers if she could move Cameron so that he would not wake up, and the
officers told her that before Cameron could be moved, her bedroom would have to
be searched as well.  Kelly complied with
this request and the officers searched her room.

Kelly further stated that
after the officers finished searching her bedroom, Corporal Cox began to search
appellant=s
bathroom.  Kelly testified that she did
not give consent for this search. 
Corporal Cox then asked appellant if there were any drugs in the house,
and appellant stated that there was marijuana in her makeup bag in the
bathroom.  Kelly stated that appellant
did not go into the bathroom with Corporal Cox.








After Corporal Cox retrieved
the makeup bag, he took it into the living room, where Sergeant Sullivan,
appellant, and Kelly were sitting, and put it on the coffee table.  Kelly testified that Corporal Cox then got up
and went into appellant=s bedroom
and found methamphetamine.[2]  Kelly stated that she was scared, but did not
take any action against the officers.  Additionally,
Kelly said that she paid all of the household bills, including the water and
electricity.

The trial court carried the
motion to suppress through the trial, and on October 12, the trial court denied
appellant=s motion to
suppress.  At the end of the trial, the
trial court made findings on the record that (1) appellant and Kelly had mutual
use and control over the bathroom and (2) appellant and Kelly had equal
authority and Kelly might have had superior authority.

C.  Analysis








The Fourth Amendment protects
against unreasonable searches and seizures. 
U.S. Const. amend. IV.  Pursuant
to the Fourth Amendment, a warrantless search of either a person or property is
considered per se unreasonable subject to a few specifically defined and well
established exceptions.  Minnesota v.
Dickerson, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993); see Estrada
v. State, 154 S.W.3d 604, 608 n.12 (Tex. Crim. App. 2005).  Consent to search is one of the well
established exceptions.  Schneckloth
v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973);
Estrada, 154 S.W.3d at 608 n.12; Carmouche, 10 S.W.3d at 331.  The protections afforded by the Fourth
Amendment may be waived by an individual consenting to a search.  Rayford v. State, 125 S.W.3d 521, 528
(Tex. Crim. App. 2003), cert. denied, 125 S. Ct. 39 (2004);  Riordan v. State, 905 S.W.2d 765, 770
(Tex. App._Austin 1995, no pet.).

When relying upon consent to
justify the lawfulness of a search, the State has the burden to prove by clear
and convincing evidence that the consent was freely and voluntarily given.  Bumper v. N. Carolina, 391 U.S. 543,
548, 88 S. Ct. 1788, 1791 (1968); see also Corea v. State, 52 S.W.3d
311, 317 (Tex. App._Houston [1st Dist.] 2001, pet. ref=d).  The burden requires the
State to show that the consent was positive and unequivocal, and there was no
duress or coercion.  Meeks v. State,
692 S.W.2d 504, 509 (Tex. Crim. App. 1985); Riordan, 905 S.W.2d at
770.  The burden cannot be discharged by
showing no more than acquiescence to a claim of lawful authority.  See Bumper, 391 U.S. at 548-49, 88 S.
Ct. at 1791-92.  








A warrantless search by law
enforcement officers does not violate the Fourth Amendment's guarantee against
unreasonable searches and seizures if the officers have obtained the consent of
a third party who possesses common authority over the premises or effects
sought to be inspected.  United States
v. Matlock, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974).  "Common authority" rests on
"mutual use of the property by persons generally having joint access or
control for most purposes."  Id. at
171 n.7, 94 S. Ct. at 993 n.7.  








If consent was not obtained
from someone with actual authority to consent to a search, a search may
nevertheless be proper if the person giving consent had apparent authority.  Illinois v. Rodriguez, 497 U.S. 177, 188‑89,
110 S. Ct. 2793, 2801 (1990).  In Rodriguez,
the Supreme Court held that a warrantless entry by law enforcement officers
onto a person=s premises
does not violate the Fourth Amendment where the entry is based upon the consent
of a third party whom the officers, at the time of entry, reasonably believed
to possess common authority over the premises, but who in fact did not have
such authority.  Id. at 188, 110
S. Ct. at 2801.  When an officer acts in
good faith in conducting a search based on consent, the evidence may not be
excluded merely because the officer made a reasonable mistake about the extent
of the consenting party=s authority.[3]  See id. at 184, 110 S. Ct. at 2799; see
also Mathis, 2004 WL 2008602, at *4. 


Whether the officers acted
reasonably is judged by an objective standard, whether the facts available to
the officer when the consent is given would warrant a person of reasonable
caution in believing the consenting party had authority over the premises.  See Rodriguez, 497 U.S. at 188, 110 S.
Ct. at 2801; see also Mathis, 2004 WL 2008602, at *2. The burden cannot
be met if the officers, faced with an ambiguous situation, nevertheless proceed
without making further inquiry.  Riordan,
905 S.W.2d at 771.   








Here, the officers arrived at
appellant=s  home to investigate a narcotics case.  When the officers arrived, they were not
aware that the house actually belonged to Kelly.  According to the officers, after they
identified themselves to appellant and asked her permission to search the
house, she responded, AI only stay
here.  It is really not my house.@  At that time, Kelly came out
of her bedroom and after showing Kelly their identifications, Sergeant Sullivan
and Corporal Cox asked Kelly=s permission to search and she gave her consent.  Appellant did not object to the search of the
bathroom or tell them that it was her private bathroom.  In fact, appellant led Corporal Cox into the
bathroom and showed him where the drugs and paraphernalia were located.  








Appellant argues that Kelly
did not have the authority to vicariously consent to the search of appellant=s bathroom and bedroom. 
Additionally, appellant contends that it was ambiguous whether Kelly
could consent to the search and that the officers should have inquired further
into the situation. However, when the officers asked if appellant would consent
to the search, she responded that it was not her house.  Further, after Kelly said that it was her house
and consented to the search, appellant did not limit the search and tell the
officers that the bedroom and bathroom were used by her exclusively.  After careful scrutiny of the record, we hold
that it supports a finding that Kelly had apparent actual authority to consent
to the search of the bathroom.  We
conclude that the trial court correctly determined that the State sustained its
burden and that the search was valid.  See
Rodriguez, 497 U.S. at 188, 110 S. Ct. at 2801.  Because the evidence shows that Kelly gave
consent to the search, we hold that the trial court did not err in denying
appellant=s motion to
suppress.  We overrule appellant=s first point.  

IV.  Extraneous Offense Evidence

In her second point,
appellant complains that the trial court abused its discretion in admitting
extraneous evidence during the guilt-innocence phase in violation of rule 403
and rule 404(b).

A.  Applicable Law

Rule 403 states,

Although relevant, evidence may be excluded if
its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence.  

Tex. R. Evid. 403.

Rule 404(b) provides,

Evidence of other crimes, wrongs or acts is not
admissible to prove the character of a person in order to show action in
conformity therewith.  It may, however,
be admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident,
provided that upon timely request by the accused in a criminal case, reasonable
notice is given in advance of trial of intent to introduce in the State=s
case-in-chief such evidence other than that arising in the same
transaction.  

 

Tex. R. Evid. 404(b).

 

 








B.  Standard of Review

The admissibility of evidence
is within the discretion of the trial court and will not be overturned absent
an abuse of discretion.  Moses v.
State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); Soto v. State,
156 S.W.3d 131, 134 (Tex. App._Fort Worth 2005, pet. ref=d). That is to say, as long as the trial court=s ruling was within the zone of reasonable disagreement, the appellate
court should affirm.  Moses, 105
S.W.3d at 627; see also Montgomery v. State, 810 S.W.2d 372, 387-88
(Tex. Crim. App. 1991) (op. on reh=g); Karnes v. State, 127 S.W.3d 184, 189 (Tex. App._Fort
Worth 2003, no pet.).  To constitute an
extraneous offense, the evidence must show that a crime or bad act was
committed and that the defendant was connected to it.  Moreno v. State, 858 S.W.2d 453, 463
(Tex. Crim. App. 1993), cert. denied, 510 U.S. 966 (1993).








Rule 404(b) prohibits the
admission of evidence of Aother
crimes, wrongs, or acts@ in a
criminal case to prove that the defendant acted in conformity with his
character to commit crimes.  Tex. R. Evid. 404(b); Marc v. State,
166 S.W.3d 767, 775 (Tex. App._Fort Worth 2005, pet. ref=d).  Such evidence of extraneous
offenses may be admitted for other purposes, however, such as proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident.  See Moses,
105 S.W.3d at 626; Nguyen v. State, 177 S.W.3d 659, 666 (Tex. App._Houston
[1st Dist.] 2005, pet. filed).  The
permissible uses listed in rule 404(b) of when character evidence may be used
are illustrative, not exhaustive.  Montgomery,
810 S.W.2d at 387.  The court of criminal
appeals has held that evidence of extraneous transactions may be admitted in
drug possession cases whenever they tend Ato prove the requisite affirmative link to the contraband.@  Brown v. State, 911
S.W.2d 744, 748 (Tex. Crim. App. 1995) (quoting Saenz v. State, 843
S.W.2d 24, 27 (Tex. Crim. App. 1992)).   

C.  Analysis

Appellant>s complaint relates to the methamphetamine found in her wallet that a
citizen found and returned to the Flower Mound Police Department.  During the pretrial hearing, the trial court
granted appellant=s motion in
limine concerning the wallet and the contents of the wallet.  However, during appellant=s cross-examination of Corporal Cox, the trial court lifted the motion
in limine after appellant asked Corporal Cox if he had Aanything to share with the jury that would affirmatively link this
contraband to [appellant] rather than [Spalding]?@  The trial court stated that it
was lifting the motion in limine because appellant opened the door by putting
in issue whether the State could affirmatively link appellant with the
methamphetamine.  The trial court said, 








But
if you hammered that there is no affirmative link in the home, nothing in the
home that connects [appellant] with it[,] but the State has something outside
the home that connects her with it, then that=s
admissible to rebut the inference that you are leaving with the jury that there
is no affirmative link between [appellant] and the drugs.

 

Appellant=s defensive theory was that other individuals, namely Spalding, used
the bathroom and that appellant might not have been aware that the drugs were
there. On cross-examination, appellant suggested that Corporal Cox could not
affirmatively link appellant with the methamphetamine.  Therefore, on redirect, the State was
entitled to establish the basis for the officer=s belief that the methamphetamine belonged to appellant.  See Brown, 911 S.W.2d at 748.  Because this testimony tended to prove the
requisite affirmative links, we hold that the testimony of Corporal Cox
concerning the methamphetamine found in appellant=s wallet was not impermissible under rule 404(b).  








We must now determine whether
there was any abuse of discretion in admitting the evidence in light of
appellant=s objection
on relevancy under rule 403.  Tex. R. Evid. 403; see Montgomery,
810 S.W.2d at 388; Marc, 166 S.W.2d at 776.  Rule 403 allows the admission of relevant
evidence unless its probative value is substantially outweighed by the danger
of unfair prejudice, confusion, undue delay, or the unnecessary presentation of
cumulative evidence. See Tex. R.
Evid. 403; Marc, 166 S.W.2d at 776.  Rule 403 favors admissibility of relevant
evidence, and the presumption is that relevant evidence will be more probative
than prejudicial.  Montgomery, 810
S.W.2d at 389.  In Santellan v. State,
the court of criminal appeals restated the factors discussed in Montgomery that
should go into the balancing test:

(1)
how compellingly the extraneous offense evidence serves to make a fact of
consequence more or less probable‑‑a factor which is related to the
strength of the evidence presented by the proponent to show the defendant in
fact committed the extraneous offense;

 

(2) the potential the other
offense evidence has to impress the jury Ain some irrational but nevertheless indelible way@;

(3)
the time the proponent will need to develop the evidence, during which the jury
will be distracted from consideration of the indicted offense; [and]

 

(4)
the force of the proponent's need for this evidence to prove a fact of
consequence, i.e., does the proponent have other probative evidence available
to him to help establish this fact, and is this fact related to an issue in
dispute.  

 

939 S.W.2d 155, 169 (Tex. Crim. App. 1997)
(footnote omitted); Marc, 166 S.W.3d at 776.  








We now turn to an examination
of the factors set out in Santellan. 
Here, evidence of the wallet and its contents is probative of the fact
that appellant, and not Spalding, possessed the methamphetamine found in the
bathroom.  Additionally, the wallet
provides the jury with the understanding of why Sergeant Sullivan and Corporal
Cox were investigating appellant.  See
Swarb v. State, 125 S.W.3d 672, 682 (Tex. App._Houston
[1st Dist.] 2003, pet. dism=d) (holding evidence of extraneous offense was helpful to the jury=s understanding of possession offense because Ait was so intertwined with the charged offense@).  Corporal Cox testified only
that appellant was being investigated because a citizen had found a wallet that
contained appellant=s
identification and methamphetamine. 
Additionally, the extraneous act is not any more heinous than the
charged offense and therefore the potential for the extraneous offense to impress
the jury in an irrational way is slight. 
Further, the State did not spend a lot of time introducing the
extraneous offense to the jury.  After
Corporal Cox testified about the methamphetamine found in appellant=s wallet, the State did not discuss the extraneous offense again.  In fact, the State did not mention the
extraneous offense in its closing statement. 
However, there was a need for the extraneous offense evidence to be
introduced because appellant questioned the State=s affirmative link between appellant and the methamphetamine found in
the house.








Finally, immediately before
Corporal Cox testified, the trial court provided the jury with a limiting instruction
that the methamphetamine found in appellant=s wallet should only be used as an aid to help the jury determine
whether or not the drugs found in Kelly=s home belonged to appellant. 
We conclude that trial court correctly determined that the probative
value of the evidence was not substantially outweighed by its prejudicial
effect.  We hold that the trial court did
not abuse its discretion in admitting the extraneous offense evidence under
rule 403.  Because we determine that the
trial court did not abuse its discretion in admitting the extraneous offense
evidence, we overrule appellant=s second point.

V.  Conclusion

Having overruled appellant=s two points, we affirm the trial court=s judgment.

TERRIE
LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON,
GARDNER, and WALKER, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED: February 2,
2006











[1]See Tex. R. App. P. 47.4.





[2]Appellant
was not prosecuted for marijuana found in the bathroom or methamphetamine found
in her bedroom.





[3]The
court of criminal appeals has never adopted the apparent authority
doctrine.  See McNairy v. State,
835 S.W.2d 101, 105 (Tex. Crim. App. 1991) (noting apparent authority doctrine
has not been adopted in Texas).  However,
several courts of appeals have recognized the doctrine.  See Davis v. State, 93 S.W.3d
664, 668 (Tex. App._Texarkana
2002, pet. ref=d)
(recognizing apparent authority of girlfriend when she made statements she
lived there); Corea, 52 S.W.3d at 317 (holding brother-in-law=s
apparent authority was extinguished when police learned the defendant used bedroom);
Riordan, 905 S.W.2d at 771 (determining no apparent authority when
officers did not have reasonable belief that mother-in-law had authority to
consent); see also Mathis v. State, No. 02-02-00320-CR, 2004 WL 2008602,
at *6 (Tex. App._Fort
Worth Sept. 7, 2004, pet. ref=d) (not designated for
publication) (holding management had apparent authority to consent to search of
defendant=s
vacant apartment).